# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIANITES AGAINST SHAKEDOWN TACTICS, an unincorporated association; and CALIFORNIANS AGAINST LITIGATION PREDATORS, an unincorporated association, <br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br><br>TEJJR ("TOTAL EQUALITY, JUST JUDGMENT AND RIGHTS"), an organization of unknown nature; MANTIC ASHANTI'S CAUSE, an organization of unknown nature; Attorney THEODORE A. PINNOCK, a natural person; and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 05-CV-2353 BTM (WMc)<br><br>**AMENDED ORDER (1) DENYING MOTION TO INTERVENE [DOC. 30], AND (2) RENDERING MOTION FOR SANCTIONS AND CEASE AND DESIST ORDER [DOC. 32] MOOT** |

This declaratory-relief action was filed in December 2005 by Julianites Against Shakedown Tactics ("JAST") and Californians Against Litigation Predators ("CALP").[1] Defendants are attorney Theodore A. Pinnock and two of his clients, Total Equality, Just Judgment and Rights ("TEJJR") and Mantic Ashanti's Cause ("Mantic Ashanti"). Plaintiffs are suing for alleged unlawful and unethical pre-litigation conduct arising from Defendants' pursuit of Americans With Disabilities Act ("ADA") claims.

Pending before the Court is a motion to intervene under Federal Rule of Civil Procedure 24(a)(2) and 24(b)(2) filed by Santa Ysabel General Store/Antiques, Rong Branch Restaurant, Mom's Pie House, and the Warm Hearth ("Applicants"). Four of the five Applicants are being sued by Defendants in a separate case for alleged ADA violations. Applicants contend that in this case, Plaintiffs' counsel has, among other things, made misrepresentations regarding Applicants' relationship with JAST and CALP that have complicated Applicants' ability to settle with Defendants. Accordingly, Applicants seek to intervene to pursue sanctions and a cease and desist order against Plaintiffs' counsel.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons discussed below, the Court **DENIES** Applicants' motion to intervene. Applicants' motion for sanctions and a cease and desist order is, therefore, moot.[2]

## I.   BACKGROUND
### A.   Plaintiffs are challenging Defendants' pre-litigation conduct.

According to Plaintiffs' First Amended Complaint, in November 2005, defendant Pinnock visited the small, mountain community of Julian, California. (FAC at ¶11.) Shortly thereafter, Pinnock sent letters to 67 businesses alleging violations of the ADA

---

[1] The original complaint identifies "Julinians Against Shakedown Tactics" as a plaintiff. The first amended complaint, however, identifies "Julianites Against Shakedown Tactics" as a plaintiff.

[2] This order supersedes the Court's December 29, 2006 order [Doc. 65].

and demanding, in total, more than $200,000 for his client, TEJJR. (Id.) Pinnock later distributed a memo to the Julian businesses warning that if his monetary demands were not met, they would begin to increase on a daily basis. (Id. at ¶ 19.) Pinnock then distributed a "series of proposed settlement agreements wherein he made varying financial demands, but which contained the significant requirement that the payment which the Julian business would make would be for an 'investigation fee' payable to TEJJR...." (Id. at ¶20.)

Plaintiffs contend that Pinnock's demands are subject to extraordinarily short deadlines so that the businesses have a difficult time obtaining "appropriate legal advice." (FAC at ¶23.) Plaintiffs also complain that Pinnock refuses to discuss any of the legal issues before filing litigation. For example, Pinnock allegedly conducts "on-site mediations" at the property he is considering suing, during which time if "a business or lawyer desire [sic] to dispute the claims, engage in fact finding or make legal arguments" Pinnock terminates the mediation and files litigation. (Id. at ¶26.)

Aside from the claims against the Julian businesses, Plaintiffs allege that Pinnock has filed more than 2000 ADA/access lawsuits and "has sent hundreds – if not thousands – of letters to businesses around Southern California threatening litigation...." (FAC at ¶¶12, 17.) Businesses that refuse to pay the "investigation fee" or hire TEJJR to conduct the access inspection are sued for alleged ADA violations by Pinnock's other client, Mantic Ashanti. Plaintiffs further assert that Pinnock's actions in Julian, which Pinnock has allegedly referred to as "the Julian Experiment", constitute a new approach for pursuing ADA claims. (Id. at ¶25.)

In filing this lawsuit, Plaintiffs are seeking court review of Defendants' pre-litigation practices, which "the Pinnock Group ***worked very hard to keep away from judicial attention***...." (FAC at ¶14, emphasis in original.) The First Amended Complaint, therefore, requests a declaration that Defendants' pre-litigation tactics are unethical and unlawful, and a mandatory injunction requiring Defendants to, in essence, comply with the law and rules of professional conduct.

**B.     Applicants seek to challenge Plaintiffs' counsel's pre-litigation conduct.**

Applicants are among the Julian businesses that received a demand letter from Pinnock in November 2005. (Apps.' P & A at 2.) Applicants contend that in approximately December 2005, Plaintiffs' counsel, Lawyers Against Lawsuit Abuse ("LALA"), entered into negotiations with Pinnock on behalf of Applicants. (Id. at 5.) LALA, however, was neither retained nor authorized to represent Applicants, and during the negotiations with Pinnock, LALA allegedly received settlement offers, but failed to timely advise Applicants of the offers. (Id.) Applicants also allege that LALA knowingly and intentionally lied about certain Applicants' position with regard to ADA compliance. (Id.) According to Applicants, these misrepresentations were made so that LALA could buy time in order to file this lawsuit. (Id.)

As a result of LALA's alleged failure to advise Applicants of Pinnock's settlement offers, Applicants contend that they were denied the opportunity to settle the ADA claims, which resulted in Pinnock filing an ADA enforcement action against 4 of the 5 Applicants. Additionally, Applicants assert that as a result of LALA's conduct, Applicants have incurred significant expenses and have encountered "great difficulty 'undoing' the adverse affects of LALA's actions and false representations." (Apps.' P & A at 8.) Accordingly, although Applicants acknowledge that they could pursue a separate action, Applicants seek to intervene to protect their interests and pursue sanctions and a cease and desist order pursuant to Federal Rule of Civil Procedure 11 against LALA.

**II.    LEGAL STANDARD.**

Rule 24(a)(2) permits anyone to intervene as a matter of right who is "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies a four-prong test, under which the applicant must establish:

(1) the application for intervention is timely;

(2) the applicant has a 'significant protectable' interest relating to the property or transaction that is the subject of the action;

(3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and

(4) the applicant's interest is not adequately represented by the existing parties in the lawsuit.

Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998). In evaluating whether these requirements are met, courts "are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." U.S. v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2002). Failure to satisfy any one of the requirements, however, justifies denial of the motion. Donnelly, 159 F.3d at 409. Additionally, in evaluating the motion, the court accepts as true all well-pleaded non-conclusory allegations. Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 819 (9th Cir. 2001).

In order to satisfy the interest requirement, the applicant's interest must be "direct, substantial, and legally protectable." Dilks v. Aloha Airlines, Inc., 642 F.2d 1155, 1157 (9th Cir. 1981). The Ninth Circuit applies a two prong test, under which an applicant's interest is significantly protectable if (1) it is protected under some law, and (2) there is a relationship between the interest and the plaintiff's claims. Donnelly, 159 F.3d at 409. The second prong, the "relationship" requirement, is generally satisfied "only if the resolution of the plaintiff's claims will affect the applicant." Id. at 410.

III. DISCUSSION.

A. Applicants are not entitled to intervene as a matter of right.

Applicants contend that they have the following interests in this litigation: (1) the resolution of certain ADA issues; (2) their legal representation; (3) enforcement of

the ADA in their community; (4) their good relationship with the disabled community; and (5) correcting LALA's alleged misrepresentations in this case. The Court finds that these interests are either not significantly protectable under Rule 24(a)(2), or that they will not be impaired or impeded by the resolution of this litigation.

**1.     Applicants' interest in the resolution of certain ADA issues.**

Among the pre-litigation tactics at issue in this case are Pinnock's demand letters to the Julian businesses. Applicants argue that because they also received a demand letter, they have a "*personal* interest in the pending challenge to their legality." (Apps.' Reply at 5, emphasis in original.) According to Applicants, in the ADA enforcement action, they have raised the validity of the demand letter as an affirmative defense to Pinnock's request for attorney's fees. To the extent the validity of the letters is decided in this case first, Applicants contend that they will be bound by that determination under the doctrine of collateral estoppel. Thus, Applicants contend that their interest in challenging the legality of the demand letters will be impacted or impeded by the resolution of this case. The Court does not agree for several reasons.

*a)     The issues in this case and the ADA enforcement action are not identical.*

Collateral estoppel bars a party from relitigating issues that were resolved in a prior proceeding. Fund for Animals v. Lujan, 962 F.2d 1391, 1399 (9th Cir. 1992). The doctrine only applies to issues actually litigated and decided in the first proceeding. General Teamsters v. Mitchell Bros. Truck Lines, 682 F.2d 763, 768 (9th Cir. 1982). Additionally, the issues presented in each case must be identical; the "doctrine does not apply if the issues are merely similar." Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir. 1992); Fund for Animals, 962 F.2d at 1399.

Applicants' affirmative defense to Pinnock's request for attorney's fees (in the ADA enforcement action) is based on a recent district court decision that refused to award attorney's fees and costs to a plaintiff who did not provide sufficient pre-litigation

notice of the alleged ADA violations. (Apps.' Reply at 7, citing Doran v. Del Taco, Inc., 373 F. Supp. 2d 1028, 1029 (C.D. Cal. 2005) and Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 577 (2004).) In Doran, the district court found that the pre-litigation notice was not sufficient because the letter to the defendants made "a general complaint that the sender 'could not find handicapped parking' and 'had serious problems trying to use your restroom' . . . ." Id. at 1034. According to the court,

> [a]lthough the letter put Defendants on general notice that they may not be ADA compliant, it provided nothing specific. An unambiguous warning notice would specify and detail the nature of the claimed ADA violation" and provide a "reasonable time" within which to fix the violation.

Id.

Under Doran, whether Pinnock is entitled to attorney's fees and costs will depend on *each* Applicant's alleged ADA violation, the content of the demand letter, and any additional pre-litigation communications by Pinnock. Accordingly, the issue of whether Pinnock's pre-litigation notice was sufficient not only differs between this lawsuit and the ADA enforcement action, but between the individual Applicants.

Moreover, this lawsuit is not an ADA enforcement action and, as Applicants' acknowledge in their reply, will not involve the determination of whether Pinnock's pre-litigation notice was sufficient for an award of attorney's fees. Rather, Plaintiffs are challenging whether "the TEJJR notices are part of an improper scheme and therefore unlawful." (Apps.' Reply at 7.)

Because the issues in this case and the ADA enforcement action are not identical, collateral estoppel does not apply and Applicants' interest in challenging the validity of Pinnock's pre-litigation notice will not be impaired or impeded by the resolution of this case.

### b) *Applicants are not in privity with Plaintiffs.*

Collateral estoppel may only be asserted against a party that was afforded a

hearing that comports with due process. <u>Avitia v. Metropolitan Club of Chicago</u>, 924 F.2d 689, 691 (7th Cir. 1991). Thus, issue preclusion will not be applied unless the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication. <u>Gibson v. U.S.</u>, 761 F. Supp. 685, 692 n.12 (C.D. Cal. 1991). <u>Starker v. U.S.</u>, 602 F.2d 1341, 1344 (9th Cir. 1979).

Applicants are not parties to this action. And in arguing that they may be barred by collateral estoppel, Applicants never discuss whether they are in privity with Plaintiffs. Instead, throughout their motion, Applicants argue that intervention is appropriate because they are not sufficiently represented by Plaintiffs and because their interests differ from Plaintiffs.

The Court agrees that the Applicants' and Plaintiffs' interests differ. Because those interests differ, Applicants are not in privity with Plaintiffs for purposes of issue preclusion. Accordingly, for this additional reason, collateral estoppel does not apply and Applicants' ability to challenge the validity of Pinnock's pre-litigation notice will not be impaired or impeded by the resolution of this case.

*c)     Applicants' interest is insufficient because it is contingent.*

Currently, at least three other district courts within this Circuit have refused to follow <u>Doran</u>'s requirement for a pre-litigation notice in order to obtain attorney's fees. <u>See</u> <u>Doran v. Vicorp Restaurants, Inc.</u>, 407 F. Supp. 2d 1120, 1123 (C.D. Cal. 2005); <u>Jankey v. Ranch House BBQ & Grill</u>, 2005 WL 3478138 (C.D. Cal. 2005); <u>While v. Save Mart Supermarkets</u>, 2005 WL 2675040 (E.D. Cal. 2005). And the Ninth Circuit has not decided whether a pre-litigation notice is necessary in order to award an ADA plaintiff attorney's fees.

Given the uncertainty regarding <u>Doran</u>, Applicants' contention that they have a significantly protectable interest in the determination of the validity of the demand letter lacks merit because it is based on the theoretical possibility that the district court will follow <u>Doran</u>. "Such a theoretical possibility cannot constitute the requisite

1 practical impairment" given the emphasis on a practical reading of Rule 24(a)(2). See
2 U.S. v. Texas Eastern Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991) (rejecting
3 applicant's argument that interest may be impaired by *stare decisis* or res judicata based
4 on possible future judicial determination); City of Stilwell v. Ozarks Rural Elec. Coop.
5 Corp., 79 F.3d 1038, 1042 (10th Cir. 1996) (holding that a contingent interest is not
6 sufficient basis for intervention as a matter of right).

### 2.     Applicants' interest in their legal representation.

Applicants next assert an interest in their legal representation.  Applicants, however, do not explain, and the Court cannot envision, how that interest will be impaired or impeded by the resolution of this litigation.

Plaintiffs are challenging Defendants' pre-litigation conduct.  Applicants do not allege that they have been legally represented by Defendants.  Additionally, Applicants have never been parties to this litigation.  (See July 20, 2006 Order Denying Motion for Substitution of Attorney, Doc. No 27.)  Thus, resolution of this case will not impair or impact Applicants' interest in their legal representation.

### 3.     Applicants' remaining interests.

Applicants also seek "to protect their personal interest in the enforcement of the [ADA] in their community, their good relationship with the disabled community, and to correct the record of LALA's misrepresentations concerning them and others." (Apps.' P & A at 2:5–7.)  Additionally, Applicants seek to intervene in order to pursue a cease and desist order and sanctions against LALA under Federal Rule of Civil Procedure 11.  (Id. at 2:7–13.)

Only interests that are "direct, substantial and legally protectable" are sufficient to justify intervention as a matter of right.  Dilks, 642 F.2d at 1157.  While the interest requirement may be satisfied by non-property interests, they are generally not sufficient to support intervention as of right. 6 Moore's Federal Practice, § 24.03[2][b] (Matthew

Bender 3d ed.); see also, Atlantic Mut. Ins. Co. v. Northwest Airlines, Inc., 24 F.3d 958, 961 (7th Cir. 1994) (concern about legal principles insufficient to justify intervention). New York News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992), is particularly relevant because it dealt with an applicant's motion to intervene in order to pursue Rule 11 sanctions.

In New York News, Inc. the applicant claimed to have personal knowledge that the complaint "contained baseless allegations" involving the applicant, and claimed an interest in protecting his reputation. Id. at 486. The applicant, therefore, sought to intervene in order to pursue Rule 11 sanctions against plaintiffs. The district court denied the motion, and on appeal, the applicant argued that he was seeking to protect the judicial process against abuse from plaintiffs' filing of baseless papers. Id. at 486. In affirming the district court, the Second Circuit held that under the Rules Enabling Act, 28 U.S.C. § 2072, the applicant did not have a legally protectable right in moving for Rule 11 sanctions. Id. at 486. Accordingly, the applicant's interest in protecting the judicial system was too remote and thus "not a 'significantly protectable interest' within the meaning of Rule 24(a)(2)." Id. (citing Donaldson v. , 400 U.S. 517, 531(1971)).

As explained in New York News, Inc., Applicants do not have a legally protectable interest in pursuing Rule 11 sanctions, and their interests in correcting LALA's alleged misrepresentations, the enforcement of the ADA and their relationship with the disabled community are simply too remote and general. Indeed, as Plaintiffs point out in their opposition[3], undoubtedly, many individuals and organizations share Applicants' interests. Accordingly, to find these interests sufficient to allow intervention would be to create a standard whereby anyone concerned with the resolution of legitimate ADA cases could intervene in this litigation, the ADA enforcement case pending against Applicants, or the thousands of other ADA actions

---

[3]The Court notes that this was one of the only relevant arguments made in Plaintiffs' opposition, which despite the substantial body of case law dealing with intervention, failed to cite even a *single* case in support of Plaintiffs' arguments.

filed in California. See Alisal Water Corp., 370 F.3d at 920 n. 3 ("A mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself. To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself."); Glyn v. Roy Al Boat Mgmt. Corp., 897 F. Supp. 451, 453 (D. Haw. 1995) ("Were this court to agree that [the applicant] could intervene . . . it would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights."). Accordingly, the Court concludes that Applicants' interests are not sufficiently direct, substantial, and legally protectable to support intervention as a matter of right.

Moreover, this litigation involves Defendants' pre-litigation conduct; it is not an ADA enforcement action, and it does not involve LALA's pre-litigation conduct. Accordingly, Applicants' interests in the enforcement of the ADA, their reputation with the disabled community, and in correcting LALA's alleged misrepresentations will not be impaired or impeded by the resolution of this case.

### B. Permissive intervention is not appropriate in this case.

A person seeking permissive intervention must establish the following three requirements:

(1) the applicant's claim or defense shares a common question of law or fact with the main action;

(2) the motion is timely; and

(3) the court has an independent basis for jurisdiction over the applicant's claims.

Donnelly, 159 F.3d at 412. However, even if the applicant satisfies these requirements, the Court has discretion to deny permissive intervention. Id. Relevant factors for evaluating whether to allow intervention include "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they

seek to advance, and its probable relation to the merits of the case." Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977). Additionally, in evaluating intervention, the court should consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. Fed.R.Civ.P. 24(b)(2); Donnelly, at 412.

Applicants have failed to establish an independent basis for jurisdiction. Based on their motion, it appears that Applicants seek to pursue state-based claims for misrepresentation and breach of the rules of professional conduct against LALA. Because there is no alleged diversity, the Court lacks jurisdiction over these claims. See Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) ("Permissive intervention ordinarily requires independent jurisdictional grounds.").[4] Accordingly, Applicants have failed to establish a threshold requirement for permissive intervention.

Moreover, even if an independent basis for jurisdiction existed, the Court concludes that permissive intervention is not appropriate in this case. Again, this litigation challenges Defendants' pre-litigation conduct. In contrast, Applicants seek to pursue claims against LALA – who is not a party to this case – for their litigation conduct. This would significantly prejudice Plaintiffs because their counsel would have to focus on defending itself in the litigation, thereby jeopardizing LALA's ability to continue representing Plaintiffs. Additionally, Applicants' claims for misrepresentation and ethical violations against LALA would significantly change the focus and nature of the litigation, resulting in undue delay. See Washington Elec. Coop., Inc. v. Massachusetts Muni. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) (Court denied intervention where applicant's claims changed the nature of the case from a contract dispute between 2 parties for $924, 208 to contract dispute involving 6 other signatories

---

[4]The Court notes that Plaintiffs' original complaint was dismissed for lack of jurisdiction. Accordingly, there also appears to be an issue as to whether jurisdiction exists over Plaintiffs' claims. (See August 1, 2006 Order Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction, Doc. No. 28.)

1  seeking over $6 million in damages. Court noted that "intervenors must take pleadings
2  as they find them."); City of Stilwell, 79 F.3d 1038 (affirming denial of permissive
3  intervention because, among other things, applicant's proposed answer interjected new
4  damage issues). Finally, as Applicants concede, they may pursue their claims against
5  LALA in a separate legal proceeding and thus will not suffer prejudice by the denial of
6  their motion to intervene. (See Apps.' P & A at 10.)

7  For each of these reasons, the Court denies Applicants' motion for permissive
8  intervention.

## IV. CONCLUSION AND ORDER.

For the reasons addressed above, the Court **DENIES** Applicants' motion to intervene. Applicants' motion for sanctions and a cease and desist order is, therefore, moot.

**IT IS SO ORDERED.**

DATED: January 5, 2007

_____
Hon. Thomas J. Whelan
United States District Judge